IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | **CIV 09-953 WJ/ACT** |
| v. | ) ) | **AMENDED COMPLAINT** |
| SONIC DRIVE-IN OF LOS LUNAS, NEW MEXICO, LTD., AND B & B CONSULTANTS, INC. | ) ) ) ) | **AND** **JURY TRIAL DEMAND** |
| Defendants. | ) ) | |

## **NATURE OF THE ACTION**

This is a public enforcement action under Title VII of the Civil Rights Act of 1964 and

Title I of the Civil Rights Act of 1991 to correct alleged unlawful employment practices on the

basis of sex and retaliation, and to provide appropriate relief for a group of female employees

adversely affected by such practices during their employment with Defendants Sonic Drive-In of

Los Lunas, New Mexico, Ltd. ("Sonic"), and B & B Consultants, Inc. ("B & B") (collectively

"Defendants").  Plaintiff Equal Employment Opportunity Commission ("EEOC" or "the

Commission") alleges that a group of women was subjected to sexual harassment while

employed at Sonic, including, but not limited to, verbal sexual harassment, including sexual

comments and innuendo, and unwelcome physical touching, which created a hostile work

environment because of sex, female.  The Commission also alleges that a group of female

employees suffered retaliation in the scheduling of their work hours and other terms, conditions,

or privileges of employment because they opposed unwelcome sexual conduct.  Finally, the

1

Commission alleges that a group of female employees was forced to resign their employment because of the severe or pervasive sexual harassment, the retaliation they experienced, and/or the employer's failure to provide prompt, appropriate, and effective preventive or remedial relief.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 (f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      At all relevant times, the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3.      EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, B & B has been a New Mexico corporation continuously doing business in Los Lunas, New Mexico, and has continuously employed at least 15 employees.

5.      At all relevant times, Sonic has been a partnership continuously doing business in Los Lunas, New Mexico, and has continuously had at least 15 employees.

6.      At all relevant times, Defendants have continuously been and are now employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

7.      At all relevant times, Defendants were a joint employer and/or an integrated enterprise that employed the group of females adversely affected by the alleged unlawful employment practices.

## GENERAL ALLEGATIONS

8.      More than thirty days prior to the institution of this lawsuit, Melissa Garcia ("Garcia") filed a charge with the Commission alleging violations of Title VII by Defendants.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

10.      B & B is involved in the operation of over 100 Sonic Drive-In restaurants in the State of New Mexico and throughout the Southwest.

11.      B & B has an ownership interest in the Sonic Drive-In restaurants where B & B is involved in the operations.

12.      The Sonic Drive-Ins operated by B & B employ over 3,000 employees in New Mexico and other southwestern states.

13.      B & B is owned by Bobby Merritt.

14.      Bobby Merritt is B & B's registered agent.

15.      Bobby Merritt is one of B & B's Directors.

16.      One of the restaurants operated by B & B is the Sonic Drive-In of Los Lunas ("Sonic").

17.     Policies and procedures applicable to employees at Sonic were provided by the Merritt Group.

18.     Upon information and belief, The Merritt Group is owned by Bobby Merritt.

19.     The Merritt Group and B & B operate out of the same physical address in Las Cruces, New Mexico.

20.     The Merritt Group provides personnel policies and procedures, including a sexual harassment policy and a workplace harassment policy, to B & B that are used in the operation of B & B-owned Sonic Drive-In restaurants, including Defendant Sonic.

21.     The sexual harassment policy used at Sonic is provided by Merritt Group.

22.     The same sexual harassment policy used at Sonic is also used at other Sonic Drive-Ins operated by B & B.

23.     The policy on workplace harassment used at Sonic is provided by Merritt Group.

24.     The same policy on workplace harassment used at Sonic is also used at other Sonic Drive-Ins operated by B & B.

25.     The policy on workplace harassment instructs employees to report harassment to their manager, the Store Supervisor, Mike Paulowsky or Barbara Stammer.

26.     Mike Paulowsky is B & B's Vice President and General Counsel.

27.     Barbara Stammer is B & B's President.

28.     The harassment policy also allows employees to send written complaints to 750 N. 17th Street, Las Cruces, New Mexico 88005.

29.     The address identified in the harassment policy is the same address used by B & B and the Merritt Group.

30.     Employees who work at one of the Sonic Drive-Ins operated by B & B can freely transfer to other B & B-operated Sonic Drive-Ins.

31.     At all times relevant to this action, B & B has been the general partner of Sonic.

32.     At all times relevant to this action, a poster was displayed at Sonic identifying B & B as the owner of Sonic.

33.     At all times relevant to this action, B & B has been and continues to hold a majority ownership interest in Sonic.

34.     Prior to 2008, Sonic's partners also included Bobby Merritt, Thomas Merritt, Matt Hein, and Robert Gomez.

35.     At all times relevant to this lawsuit, the General Manager of Sonic was Robert Gomez ("Gomez").

36.     Gomez signed a "Sonic Drive-In General Manager's Contract" ("Manager's Contract").

37.     The Manager's Contract signed by Gomez took effect on September 1, 2005.

38.     The Manager's Contract is between Gomez and "the General Partner."

39.     "General Partner" is defined in the Manager's Contract as "B & B Consultants, Inc., B & B Consultants of Nevada, Inc., or any successor thereto, or Bobby J. Merritt, as appropriate, including the Managing Member of any limited liability company."

40.     The Manager's Contract makes Gomez, as general manager, subject to direction from the General Partner or its agents, including a Regional Director.

41.     The Manager's Contract identifies Gomez as an at-will employee subject to termination by the General Partner, Bobby J. Merritt, the Store Supervisor, or Regional Director.

42.     The Manager's Contract subjects Gomez to the Merritt Group Drug & Alcohol policy.

43.     The Manager's Contract subjects Gomez to the Sonic Drive-In Policy Against Workplace Harassment and requires Gomez to "promptly report to the General Partner and Supervisor any witnessed or experienced claims and/or claims by employees of any violation(s) of such policy . . ."

44.     In the B & B/Merritt organization, General Managers report to Supervisors.

45.     In the B & B/Merritt organization, Supervisors report to Regional Directors.

46.     In the B & B/Merritt organization, Supervisors are responsible for overseeing the operations of more than one Sonic Drive-In owned by B & B.

47.     In the B & B/Merritt organization, Regional Directors are responsible for overseeing the operations of several Sonic Drive-Ins owned by B & B.

48.     At all relevant times, Gomez's superior and the Supervisor for Sonic was Mark Cochran.

49.     Mark Cochran was responsible for overseeing the operations of Sonic as well as other Sonic Drive-Ins owned or operated by B & B.

50.     For at least part of the relevant time period, Scott Brannen was the Regional Director to whom Cochran reported.

51.     For at least part of the relevant time period, Matt Hein was the Regional Director to whom Cochran reported.

52.     Both Brannen and Hein were responsible for overseeing the operations of several Sonic Drive-Ins owned or operated by B & B, including Defendant Sonic.

53.     B & B provides payroll services to B & B-owned-or-operated Sonic Drive-Ins.

54.     B & B pays property taxes on behalf of B & B-owned-or-operated Sonic Drive-Ins.

55.     B & B provides legal services on behalf of B & B-owned-or-operated Sonic Drive-Ins.

56.     B & B provides administrative services to B & B-owned-or-operated Sonic Drive-Ins.

57.     As General Manager, Gomez was responsible for the daily operations of Sonic.

58.     Gomez had the authority to hire and fire employees.

59.     Gomez regularly hired teenage girls.

60.     Gomez also hired several women who were on work detail as part of a rehabilitation program at the New Mexico Women's Recovery Academy.

61.     Gomez was the only employee of Sonic who consistently worked a 40 hour work week.

62.     The employees who were supervised by Gomez performed various work assignments, including fountain-drink makers and car-hop servers.

63.     As general manager, Gomez was responsible for distributing employee handbooks to new employees.

64.     As general manager, Gomez was responsible for training new employees on the policies and procedures used by B & B at its Sonic Drive-Ins, including its policy on sexual harassment.

65.     As general manager, Gomez was responsible for documenting that new employees received the applicable training.

66.     Gomez failed to provide many of the female employees at Sonic a copy of Defendants' employee handbook.

67.     Gomez failed to train many of the female employees on Defendants' policies and procedures.

68.     Gomez was reprimanded on September 1, 2008 for, among other things, "a continuing failure to fully document the orientation and explanation of policies and procedures to new hires."

69.     At all relevant times, employees were told to sign a declaration stating that they were not harassed and did not witness any workplace harassment prior to receiving their regularly scheduled paycheck.

70.     The paycheck sign-off sheet is provided by the Merritt Group and is used in other B & B-operated Sonic Drive-Ins.

71.     Since at least 2006, a group of female employees was sexually harassed by Gomez.

72.     At least a dozen of the female employees sexually harassed by Gomez were minors between the ages of 16 and 18.

73.     Many of the female employees did not receive training regarding Defendants' sexual harassment policy.

74.     Many of the female employees who were sexually harassed by Gomez did not know and were not advised that there was a process for reporting sexual harassment to B & B officials other than Gomez.

75.     Examples of conduct which make up the sexual harassment suffered by the group of aggrieved female employees include, but are not limited to, the conduct alleged in paragraphs 76 through 100 below.

76.     Gomez sometimes touched or asked to touch female employees' breasts.

77.     Gomez frequently slapped and/or grabbed female employees' buttocks.

78.     Gomez frequently touched and held female employees' hands.

79.     On almost a daily basis, Gomez rubbed or massaged the shoulders and backs of female employees.

80.     On at least one occasion, Gomez bit a female employee's shoulder.

81.     On at least one occasion, Gomez tried to unfasten a female employee's bra.

82.     Gomez sometimes poked or tickled female employees' sides and elbows.

83.     Gomez frequently blew air on female employees' necks and/or tickled female employees' necks with a pen or his finger.

84.     On at least one occasion, Gomez slapped a female employee's face.

85.     On several occasions, Gomez grabbed a female employee's ponytail and said "do you like that?"

86.     On at least one occasion, Gomez hit a female employee hard on the top of her head with his elbow.

87. On at least one occasion, Gomez "humped" a female employee from behind, simulating sexual intercourse.

88. On almost a daily basis, Gomez snapped the buttocks of female employees with a towel.

89. On almost a daily basis, Gomez put ice down the shirts of female employees.

90. Gomez often propositioned female employees to have sexual intercourse with him, including inviting them to go to the bathroom or walk-in freezer with him.

91. Gomez sometimes propositioned female employees to give him a "blow job" or "suck [his] dick."

92. On almost a daily basis, Gomez made sexual comments about female employees' breasts, including:

      a. "I bet you are a C;"

      b. "your boobs are so big you look pregnant;"  and

      c. "you have such big breasts, can I touch them?"

93. On almost a daily basis, Gomez made sexual comments about female employees' buttocks.

94. On almost a daily basis, Gomez made other sexual comments to female employees, including:

      a. "if you were covered in chocolate, I would lick it off of you;"

      b. "you should be on top during sex because it is a good way to lose weight;"

      c. "you can pick up and roll those quarters with your vagina and give me change;"

  d. "wouldn't that whip cream be better somewhere else;"

  e. "can you open the bathroom so I can touch myself;"

  f. "do you get pubic hair stuck in your braces;"

  g. "young girls are fine;"

  h. "can you see us kissing;" and

  i. "would you like to be with a grown man?"

95. On almost a daily basis, Gomez referred to female employees by such labels as:

  a. "white bitch;"

  b. "cracker;"

  c. "drunken whore;"

  d. "stupid;"

  e. "fucking stupid bitch;"

  f. "fat ass;"  and

  g. "bitch."

96. Gomez frequently made sexual comments about his genitals, including:

  a. "do you want to hold it for me;"

  b. "it's small but it's the motion that counts;"  and

  c. "I'm going to the bathroom to touch myself."

97. Gomez frequently compared his penis to an extra long hot dog.

98. When a female employee dressed up as Minnie Mouse for Halloween, Gomez commented, "this is the first time I want to fuck a mouse."

99. Gomez frequently said, "don't make me bend you over" to female employees.

100.    On more than one occasion Gomez showed pornographic pictures to employees on his phone.

101.    Gomez's actions and comments were observed by various female employees at Sonic.

102.    Gomez' sexual comments and touching were not invited or welcomed by the female employees at Sonic.

103.    Gomez's sexual comments and touching were offensive to the female employees at Sonic.

104.    Gomez' inappropriate sexual comments and touching were sufficiently severe or pervasive to alter the working conditions of female employees at Sonic.

105.    Several female Sonic employees complained to Gomez about his conduct.

106.    Despite these complaints, Gomez did not cease his inappropriate and offensive sexual comments and touching.

107.    Several female employees complained to assistant managers or crew leaders about Gomez's behavior.

108.    Several female employees complained to Mark Cochran about Gomez's behavior.

109.    A female employee's mother complained to Mark Cochran about Gomez's behavior.

110.    Despite these complaints, neither Sonic nor B & B took prompt, appropriate, and effective remedial action.

111.    As part of its investigation into Garcia's charge of discrimination, EEOC conducted an on-site visit at Sonic.

112.    After the onsite visit by the EEOC, Gomez continued to direct sexual comments toward female employees.

113.    After the onsite visit by EEOC, Gomez continued to unnecessarily touch female employees.

114.    Gomez sent home at least one female employee after she complained to him about his inappropriate actions.

115.    Gomez reduced the hours of at least two female employees soon after they complained to him about his inappropriate conduct.

116.    Because of sexual harassment, a failure to address sexual harassment, and/or retaliation, the working conditions for many female employees at Sonic were intolerable, forcing them to quit.

## FIRST CLAIM FOR RELIEF

[Retaliation – 42 U.S.C. § 2000e-3(a)]

117.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

118.    Defendants unlawfully retaliated against a group of female employees in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by discriminating against them for opposing unlawful employment practices.

119.    Several female employees at Sonic complained to Gomez or other managers about inappropriate and sexually harassing conduct.

120.    These complaints were protected activity under Title VII, 42 U.S.C. § 2000e-3(a).

121.    Either immediately or shortly after complaining about inappropriate and sexually harassing conduct, some of these women were subjected to adverse employment actions, including but not limited to being sent home or having their hours reduced.

122.    This retaliation was intentional.

123.    This retaliation was done with malice and/or with reckless indifference to the complainants' federally protected rights.

124.    As a result of this retaliation, the aggrieved female employees were deprived of equal employment opportunities, lost wages and benefits, suffered emotional distress, and were otherwise adversely affected because they engaged in protected activity.

## SECOND CLAIM FOR RELIEF

[Constructive Discharge – 42 U.S.C. §§ 2000e-2(a)]

125.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

126.    Defendants constructively discharged a group of female employees, in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating and allowing a work environment permeated with sexual harassment, retaliation, and other disparate treatment based on gender.

127.    The working conditions created by the unlawful actions alleged in the preceding paragraphs became so intolerable that a reasonable person would not have continued to subject herself to those conditions.

128.    Defendants knew or should have known about the sexual harassment and gender-based hostile work environment that existed at Sonic.

129.    Defendants failed to take reasonable measures to prevent and promptly correct the sexual harassment and gender/based hostile work environment at Sonic.

130.    At least one member of management at Sonic was directly responsible for the harassment and retaliation.

131.    The unlawful employment practices described above were intentional.

132.    The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of a group of female employees.

133.    As a result of the events and actions described above, the aggrieved female employees lost wages and benefits, were deprived of equal employment opportunities, suffered and are suffering emotional distress, and were and are otherwise adversely affected because of sex.

### THIRD CLAIM FOR RELIEF

[Sexual Harassment/Sexually Hostile Work Environment – 42 U.S.C. § 2000e-2(a)]

134.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

135.    Since at least August 2006 Defendants discriminated against a group of female employees in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by harassing them and creating a hostile work environment because of their sex.

136.    The inappropriate and offensive sexual conduct, as alleged in the preceding paragraphs, was uninvited, unwelcome, and sufficiently severe or pervasive to alter the terms and conditions of employment of a group of female employees.

137.    Defendants, by and through Gomez and other managers, were aware of the severe or pervasive sexual harassment occurring at Sonic.

138.    Gomez was a manager and supervisor of the women he sexually harassed.

139.    Defendants failed to take reasonable measures to prevent sexual harassment.

140.    Defendants failed to take reasonable measures to promptly correct sexual harassment.

141.    As the general manager and part owner of Sonic, Gomez was an alter ego for Sonic.

142.    The unlawful employment practices described above were intentional.

143.    The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights a group of female employees.

144.    As a result of the events and actions described above, the aggrieved female employees were deprived of equal employment opportunities, suffered emotional distress, and were otherwise adversely affected because of sex.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with them, from engaging in harassment of employees because of sex and any other employment practice which discriminates on the basis of sex.

B.    Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with

them, from engaging in any employment practice that retaliates against any individual for

opposition to perceived unlawful employment practices and/or because the individual has made a

charge, testified, assisted or participated in any manner in a Title VII proceeding.

      C.     Order Defendants to institute and carry out policies, practices, and programs

which provide equal employment opportunities for women and which eradicate the effects of

their past and present unlawful employment practices, including sex discrimination and

retaliation.

      D.     Order Defendants to make whole the aggrieved female employees by providing

appropriate back pay and benefits with prejudgment interest in amounts to be determined at trial

and other affirmative relief necessary to eradicate the effects of Defendants' unlawful

employment practices, including, but not limited to, reinstatement and/or front pay in lieu of

reinstatement.

      E.     Order Defendants to make whole the aggrieved female employees by providing

compensation for past and future pecuniary losses resulting from the unlawful employment

practices described above, including job search expenses and other pecuniary losses in amounts

to be determined at trial.

      F.     Order Defendants to make whole the aggrieved female employees by providing

compensation for past and future nonpecuniary losses resulting from the unlawful practices

complained of above, including, but not limited to, emotional pain, suffering, inconvenience,

mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses, in amounts

to be determined at trial.

G.      Order Defendants to pay the aggrieved female employees punitive damages for Defendants' malicious and/or reckless conduct described above, in amounts to be determined at trial.

H.      Grant such other and further relief as the Court deems just, necessary, equitable, and proper in the public interest.

I.      Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED October 1, 2010.

Respectfully submitted,

/s/ Loretta Medina
LORETTA MEDINA
Senior Trial Attorney
EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Albuquerque Area Office
505 Marquette NW, Suite 900
Albuquerque, New Mexico 87102
(505) 248-5230


D. ANDREW WINSTON
Senior Trial Attorney

SEAN RATLIFF
Trial Attorney

RITA BYRNES KITTLE
Supervisory Trial Attorney

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
303 E. 17th Avenue, #410
Denver, CO  80203
(303) 866-1361

Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

The undersigned attorney of the EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION, hereby certifies that on October 1, 2010, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

Barbara G. Stephenson
GILKEY & STEPHENSON, PA
500 Marquette, NW, Suite 505
Albuquerque, NM 87102

-and-

Craig R.Annunziata
Steve A. Miller
FISHER & PHILLIPS LLP
1000 Marquette Building
140 S. Dearborn Street
Chicago, IL 60603

Attorneys for Defendant

                                        *s/ Sean Ratliff*
                                        Trial Attorney